UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASON GERHARD,<br><br>                           Plaintiff,<br><br>                v.<br><br>TERRENCE REIDY, in his official capacity as Secretary of the Executive Office of Public Safety and Security (EOPSS), and ANDREA JOY CAMPBELL, in her official capacity as Attorney General of Massachusetts,<br><br>                           Defendants. | CIVIL ACTION<br>NO. 1:24-cv-10270-AK |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS UNDER RULES 12(b)(1) AND 12(b)(6)**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants move to dismiss Plaintiff Jason Gerhard's Complaint, ECF No. 1, for two reasons. First, Gerhard lacks standing to challenge Massachusetts' firearm licensing scheme because he is already prohibited from possessing a firearm under both New Hampshire and federal law as a result of his multiple federal felony convictions; the Massachusetts firearm licensing requirement therefore is not causing him any injury in fact, and the relief he requests in this Court would not redress his inability to possess a firearm. Second, Gerhard's Complaint fails to state a claim that the Massachusetts firearm licensing scheme violates the Second Amendment because the Supreme Court has recently, and explicitly, stated that states may impose licensing requirements for carrying a firearm.

**BACKGROUND**

Gerhard alleges that he is a New Hampshire resident who frequently travels to Massachusetts. Compl. ¶ 1, ECF No. 1. He contends that he "would keep and bear arms during my frequent travels into Massachusetts" but that Massachusetts' firearm licensing statutes, and Defendants' alleged "misapplication" of these statutes, prohibit him from doing so, in violation of the Second Amendment to the United States Constitution. *Id.* at ¶¶ 1, 2, 9.

**ARGUMENT**

**I.     Gerhard Lacks Standing To Challenge Massachusetts' Firearm Licensing Scheme.**

Gerhard lacks standing to challenge Massachusetts' firearm licensing scheme because he is already prohibited from possessing a firearm under both New Hampshire and federal law, and therefore he has alleged no injuries caused by Massachusetts' firearm licensing scheme, nor has he alleged any injuries that possibly could be redressed by a favorable decision in this Court. Standing is a "threshold question in every federal case." *United States v. AVX Corp.*, 962 F.2d 108, 113 (1st Cir. 1992) (internal quotation marks omitted). "If a party lacks standing to bring a matter before the court, the court lacks jurisdiction to decide the merits of the underlying case." *Id.* "The inquiry into standing seeks to determine "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.* (internal quotation marks omitted). The "irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Id.* (internal quotation marks

omitted). "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (internal quotation marks omitted).

Gerhard has failed to allege any injury in fact, any causation between any injury and Massachusetts' firearm licensing scheme, or any possible redressibility by this Court, because Gerhard is already prohibited from possessing a firearm under both New Hampshire and federal law. Gerhard has multiple federal felony convictions for his actions related to "actively supporting two convicted criminals during a well-publicized, nine-month standoff with federal authorities." *See United States v. Gerhard*, 615 F.3d 7, 12 (1st Cir. 2010).[1] As a result of these convictions, Gerhard is prohibited from possessing a firearm in his home state, New Hampshire, Compl. ¶ 1, as well as in any state he travels to under federal law. As the First Circuit's decision in *United States v. Gerhard* describes, Gerhard was convicted after a jury trial of four counts: conspiring to prevent federal officers from discharging their duties; conspiring to commit offenses against the United States; being an accessory after the fact to tax crimes; and possession of firearms and/or destructive devices in connection with a crime of violence. *Id.* He was sentenced to a 240 month term of imprisonment. *Id.* It is unlawful in Gerhard's state for a convicted felon to possess a firearm. N.H. Rev. Stat. § 159:3.[2] In addition, 18 U.S.C. § 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term

---

[1] "It is well-accepted that federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand." *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990).

[2] In fact, in January 2023, Gerhard, who is a New Hampshire State Representative, introduced a bill in the New Hampshire House of Representatives titled "An Act restoring firearm ownership rights to ex-felons" that would repeal N.H. Rev. Stat. § 159:3, and restore the right to possess a firearm to felons whose convictions did not involve inflicting physical harm on another individual, and who have completed their terms of incarceration. N.H. House Bill 144-FN, available at https://www.gencourt.state.nh.us/bill_Status/billinfo.aspx?id=591&inflect=2.

exceeding one year" to possess a firearm. Because Gerhard has multiple convictions for crimes punishable by imprisonment for terms exceeding one year, federal law also prohibits him from possessing a firearm—regardless of where he lives or travels. Thus, Gerhard has not been injured by the Massachusetts firearm licensing scheme (as he cannot possess a firearm in any event), and any decision by this Court about Massachusetts' firearm license would not have no impact on whether Gerhard could lawfully possess a firearm in the state. For all of these reasons, Gerhard lacks standing to challenge Massachusetts' firearm licensing scheme, and the Court should dismiss the Complaint for lack of standing. *See Lujan*, 504 U.S. at 560-61.

**II.     Gerhard's Complaint Fails to State a Claim Under the Second Amendment.**

Even if this Court reaches the Plaintiff's constitutional challenge to Massachusetts' firearm licensing scheme, which it should not because Gerhard lacks standing to bring it, the Court should dismiss the Complaint for failure to state a claim, and it need not conduct the two-step test articulated in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). This is because, while the Supreme Court in *Bruen* invalidated the "proper cause" requirement in New York's licensing scheme, it otherwise made clear that states may require a license to possess and carry a firearm. Thus, the Complaint fails to state a claim upon which relief can be granted.

While invalidating New York's "proper cause" requirement because there is no "historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense" the Supreme Court nonetheless clearly stated that, "to be clear, nothing in our analysis should be interpreted to suggest the unconstitutionality of . . . licensing regimes, under which a general desire for self-defense is sufficient to obtain a [permit]. *Id.* at 39 n.9 (internal quotation marks omitted). The Court explained:

> Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent "law-abiding, responsible citizens" from exercising their Second Amendment right to public carry. Rather, it

appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, "law-abiding, responsible citizens." And they likewise appear to contain only narrow, objective, and definite standards guiding licensing officials.

*Id.* (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)) (other quotation marks and citations omitted); *accord id.* at 79-80 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[T]he Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense . . . [which] may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements."). While not the express holding of *Bruen*, this Court is nonetheless bound by the Court's discussion of the constitutionality of firearm licensing regimes, as courts "are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when, as here, a dictum is of recent vintage and not enfeebled by any subsequent statement." *McCoy v. Massachusetts Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991).

Within the last two months, this Court dismissed for failure to state a claim a Second Amendment challenge to Massachusetts' firearm licensing statute brought by another plaintiff appearing *pro se* without conducting a *Bruen* analysis. In an electronic order in *Lu v. Executive Office of Public Safety and Security*, this Court wrote:

> Plaintiff Kang Lu challenges Massachusetts statutory scheme regulating the licensure and carrying of firearms, as is articulated under state law. The Court reads Lu's challenge to § 10(m) as challenging Massachusetts[] licensing scheme as a violation of the Second Amendment. Lu's claim challenging licensing requirements is not viable under the Supreme Court's decision in *Bruen* which explicitly upheld such licensing schemes.

appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, "law-abiding, responsible citizens." And they likewise appear to contain only narrow, objective, and definite standards guiding licensing officials.

*Id.* (quoting *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008)) (other quotation marks and citations omitted); *accord id.* at 79-80 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[T]he Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense . . . [which] may require a license applicant to undergo fingerprinting, a background check, a mental health records check, and training in firearms handling and in laws regarding the use of force, among other possible requirements."). While not the express holding of *Bruen*, this Court is nonetheless bound by the Court's discussion of the constitutionality of firearm licensing regimes, as courts "are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when, as here, a dictum is of recent vintage and not enfeebled by any subsequent statement." *McCoy v. Massachusetts Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991).

Within the last two months, this Court dismissed for failure to state a claim a Second Amendment challenge to Massachusetts' firearm licensing statute brought by another plaintiff appearing *pro se* without conducting a *Bruen* analysis. In an electronic order in *Lu v. Executive Office of Public Safety and Security*, this Court wrote:

> Plaintiff Kang Lu challenges Massachusetts statutory scheme regulating the licensure and carrying of firearms, as is articulated under state law. The Court reads Lu's challenge to § 10(m) as challenging Massachusetts[] licensing scheme as a violation of the Second Amendment. Lu's claim challenging licensing requirements is not viable under the Supreme Court's decision in *Bruen* which explicitly upheld such licensing schemes.

*Lu v. Executive Office of Public Safety and Security*, Docket No. 1:23-cv-12045-AK, ECF No. 49 (D. Mass. Jan. 11, 2024) (Kelley, J.).[3] The Court should do the same here.

Other courts have taken the same approach. In *United States v. Libertad*, No. 22-CR-644 (JSR), 2023 WL 4378863, at *4 (S.D.N.Y. July 7, 2023), the U.S. District Court for the Southern District of New York likewise concluded that no historical analysis would be necessary to decide a facial challenge to state licensing requirements to possess a firearm that, like Massachusetts, do not require "proper cause" as invalidated in *Bruen*. While in that case, the question before the court was the constitutionality of 18 U.S.C. § 922(a)(3), which makes it unlawful to receive a firearm from out of state except through a federally licensed dealer, the court nonetheless discussed *Bruen*'s applicability to state licensing regimes, because § 922(a)(3) "operates in tandem with such state licensing regimes." *Libertad*, 2023 WL 4378863, at *4. "Importantly," the court observed, "both the majority opinion and Kavanaugh concurrence indicated the likely constitutionality of shall-issue regimes -- at least to the extent they are not applied in practice to frustrate gun ownership or carrying by law-abiding, responsible citizens -- without first conducting any exhaustive historical analysis, suggesting that such 'shall-issue' regimes do not infringe the right to keep and bear arms." *Id.* The court continued that

> [T]he implication of both the *Bruen* majority opinion and the Kavanaugh concurrence is that "shall-issue" licensing regimes, so long as they allow persons contemplated by the Second Amendment to keep and bear arms and are not applied in practice to frustrate that right, do not even trigger a *Bruen* inquiry into whether they are consistent with this Nation's tradition of firearm regulation. This is because they do not on their face prevent anyone lawfully entitled to do so from "keep[ing] and bear[ing] arms."

---

[3] In November 2023, Gerhard moved to intervene in that case. *Lu*, Docket No. 1:23-cv-12045-AK, ECF No. 34 (D. Mass. Nov. 14, 2023). This Court denied that motion on January 11, 2024. *Id.* at ECF No. 51. Gerhard filed his Complaint in this case on February 2, 2024. ECF No. 1.

*Id.* In that case, the Court conducted a *Bruen* analysis because § 922(a)(3) regulated the transfer of firearms across borders and thus was not merely, as in this case, a challenge to a state firearm licensing scheme that would "not even trigger a *Bruen* inquiry." *Libertad*, 2023 WL 4378863, at *4.

A recent decision from the Second Circuit rejecting a facial Second Amendment challenge to a specific aspect of New York's firearm licensing regime underscores that dismissal of the Complaint for failure to state a claim is warranted. In *Antonyuk v. Chiumento*, 89 F.4th 271 (2d Cir. 2023), the Second Circuit held the plaintiffs were unlikely to succeed on the merits of their Second Amendment challenge to New York's statutory requirement that applicants for in-home and concealed-carry licenses have "good moral character." That Court emphasized that "the Supreme Court has repeatedly admonished that the Second Amendment protects the rights of law-abiding and responsible citizens and has approved of 'shall-issue' licensing regimes that deny firearms licenses to individuals who lack good moral character in the sense that they are not law-abiding and responsible and pose a danger to the community if licensed to carry firearms in public." *Antonyuk*, 89 F.4th at 314.

The Court should dismiss the Complaint for failure to state a claim because in *Bruen* the Supreme Court made "clear" that "nothing in our analysis should be interpreted to suggest the unconstitutionality of . . . licensing regimes, under which a general desire for self-defense is sufficient to obtain a [permit]." *Bruen*, 597 U.S. at 39 n.9 (internal quotation marks omitted); *see also Lu v. Executive Office of Public Safety and Security*, Docket No. 1:23-cv-12045-AK, ECF No. 49 (D. Mass. Jan. 11, 2024).

## CONCLUSION

For these reasons, the Court should dismiss the Complaint under Rules 12(b)(1) and 12(b)(6), with prejudice, for lack of jurisdiction and failure to state a claim.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | TERRENCE REIDY, in his official capacity as Secretary of the Executive Office of Public Safety and Security, and ANDREA JOY CAMPBELL, in her official capacity as Attorney General of Massachusetts, |
|  | By their attorneys, |
|  | ANDREA JOY CAMPBELL<br>ATTORNEY GENERAL |
| March 8, 2024 | */s/ Phoebe Fischer-Groban*<br>Phoebe Fischer-Groban, BBO No. 687068<br>Assistant Attorney General<br>Government Bureau<br>Office of the Attorney General<br>One Ashburton Place<br>Boston, MA 02108<br>(617) 963-2589<br>Phoebe.Fischer-Groban@mass.gov |

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 8, 2024, a true copy of the above document was served upon the following parties by first-class mail:

Jason Gerhard, *pro se*
107 N. Main St.
Concord, NH 03301

                                                  */s/ Phoebe Fischer-Groban*
                                                  Phoebe Fischer-Groban
                                                  Assistant Attorney General